## UNITED STATES v. PORTER et al.

Circuit Court of Appeals, Ninth Circuit.
November 7, 1927.

No. 5237.

Taxation ⟨key⟩5—Sheep, increase of those distributed to Indian by government, owned by his son outside reservation, held subject to state taxation (Treaty with Navajo Indians, June 1, 1868, art. 12, 15 Stat. 670; Enabling Act of Arizona, § 20, 36 Stat. 570).

Where sheep were distributed to Indian under Treaty with Navajo Indians June 1, 1868, art. 12, 15 Stat. 670, and Indian gave son some lambs, sheep which were increase of those given son and other personal property for which sheep were exchanged, owned by son now residing outside reservation, held subject to taxation by state, since the United States has no such interest in property as would exempt it from taxation by state under Enabling Act of Arizona, § 20, 36 Stat. 570.

Appeal from the District Court of the United States for the District of Arizona; F. C. Jacobs, Judge.

Suit by the United States, as guardian of Little Silversmith and others, against Burr W. Porter and others, members of the Board of Supervisors of Apache County, in the State of Arizona, and others. From a decree of dismissal, the United States appeals. Affirmed.

John B. Wright, U. S. Atty., of Tucson, Ariz., and George R. Hill, Asst. U. S. Atty., of Phoenix, Ariz.

Levi S. Udall, Co. Atty., of St. Johns, Ariz. (Maurice Barth, of St. Johns, Ariz., of counsel), and Isaac Barth, of Holbrook, Ariz., for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. The present suit was instituted by the United States against the taxing officers of Apache county, Arizona, to restrain them from assessing, levying, and collecting taxes on about 1,000 head of sheep and 100 head of cattle, owned by certain Indians belonging to the Navajo Tribe. From a decree of dismissal the present appeal was prosecuted. The material facts, taking the view most favorable to the appellant, are as follows:

The Indians on whose behalf the suit is prosecuted are members of the Navajo Tribe and have never severed their tribal relations. By article 12 of the Treaty of 1868 between the United States and the Navajos it was agreed that the sum of $150,000, appropriated or to be appropriated, should be distributed as follows: "Second. The purchase of

15,000 head of sheep and goats at a cost of not to exceed $30,000." 15 Stat. 670. Under date of August 19, 1870, the agent for the Navajo Tribe reported to the Superintendent of Indian Affairs that a count of the Navajos made on the 18th of the previous October disclosed a total of 8,181 Indians, including men, women, and children; that on November 25 he received 14,000 head of sheep and 1,000 head of goats, in accordance with article 12 of the treaty; and that the sheep and goats thus received were issued to the members of the tribe.

There was further testimony tending to show that each Indian received 2 sheep, and that four or five years later one sheep was issued to each Indian in the like manner; that the father of Little Silversmith was one of the Indians to whom distribution was made; that many years ago the father marked 4 ewe lambs and gave them to Little Silversmith for herding the sheep; that the 4 ewe lambs remained with the father's flock until about 26 years ago, when the number had increased to 50; that the 1,000 head of sheep mentioned in the complaint are the increase of these 50; that the Indians wove blankets from wool grown on the sheep, and traded the blankets to the Mexicans for horses; that the horses were exchanged for cattle; that some 30 years ago the father gave Little Silversmith a bull and a calf, and that the 100 head of cattle described in the complaint are the increase of these two.

Owing to the great lapse of time, the testimony tending to show that the father of Little Silversmith participated in the distribution of sheep was necessarily indefinite and weak, and some of it of doubtful competency; but we have assumed that such was the fact for the purposes of this appeal.

Section 20 of the Enabling Act, under which the state of Arizona was organized and admitted, provides "that no taxes shall be imposed by the state upon lands or property therein belonging to or which may hereafter be acquired by the United States or reserved for its use; but nothing herein, or in the ordinance herein provided for, shall preclude the said state from taxing as other lands and other property are taxed any lands and other property outside of an Indian reservation owned or held by any Indian, save and except such lands as have been granted or acquired as aforesaid or as may be granted or confirmed to any Indian or Indians under any act of Congress, but said ordinance shall provide that all such lands shall be exempt from taxation by said state so long and to such extent as Congress has prescribed or may hereafter prescribe." 36 Stat. 570.

The personal property described in the complaint is owned and held by an Indian, outside of an Indian reservation, and we perceive no reason why it is not subject to taxation by the state.

In United States v. Rickert, 188 U. S. 432, 23 S. Ct. 478, 47 L. Ed. 532, it was held that personal property, consisting of cattle, horses, and other property of like character, issued to the Indians by the United States and used by them on their allotments, was n.t subject to assessment and taxation by the state; but in that case the property was issued to an allottee pursuant to acts of Congress and treaties, was branded "I. D." (indicating Indian Department), and was in possession of the allottee for use on his allotment. Under such circumstances the court held that the property was, in fact, the property of the United States, and was put into the hands of the Indians to be used in execution of the purpose of the government in reference to them.

McKnight v. United States (C. C. A.) 130 F. 659, United States v. Pearson (D. C.) 231 F. 270, and United States v. Dewey County (D. C.) 14 F.(2d) 784, are based on similar facts. In all of these cases the property was issued to the Indians under regulations of the Indian Office, providing: "When cattle are issued to Indians, either for work oxen or for breeding purposes, each animal must be branded, in addition to the I. D. brand, with a private mark to indicate the person to whom it is issued. A record of such private marks must be kept in the agency office. The agent is also required to see that the increase of all issued cattle is similarly branded." Under such circumstances it is easy to see that the property is in fact the property of the United States.

In this case it does not appear that the sheep were issued under any such regulations, and in view of the small value of the property issued to each Indian it is not at all clear that any limitation on its use or disposition was imposed or intended. Furthermore, the Indian in whose behalf this suit is brought received no property from the United States. His lambs and calves came to him by gift or purchase from his father, and the right of the father to make such disposition of his property does not seem to be open to question. According to the testimony, he now owns and holds about 1,000 head of sheep, 100 head of cattle, 100 head of horses, and has purchased automobiles from time to time, all of which, he claims, was procured from the same source, or by the same means. He lives outside of the reservation, under the protection of the state,

and it would be going a long way to hold that he is under no obligation to contribute to the expenses of the state government, simply because his ancestor received a couple of sheep from the government nearly two generations ago, and that ancestor gave him 4 lambs and 2 calves a generation later.

The record would seem to afford no basis for the claim that the United States has any such interest in the property as would exempt it from taxation by the state, and the decree of the court below is therefore affirmed.